# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **JOHN K. BEASLEY,** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00055 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CONSOLIDATION COAL COMPANY,** | ) | By: James P. Jones |
| **ET AL.,** | ) | United States District Judge |
| | ) | |
| Defendants. | ) | |

*W. David Paxton, Thomas J. Bondurant, Jr., and Daniel R. Sullivan, Gentry Locke Rakes & Moore LLP, Roanoke, Virginia, for Plaintiff; Stephen M. Hodges and Cameron S. Bell, Penn, Stuart & Eskridge, Abingdon, Virginia, for Defendants.*

The plaintiff in this action, an underground coal miner, was fired by the coal company when he was accused by a fellow employee of having smoking materials in the mine and after he refused to open his locker where such materials were later found. Although the plaintiff was charged by state regulators with a criminal offense relating to the smoking materials, the charge was later dismissed and the plaintiff has now sued his accuser, his supervisor, and the company for damages under various state and federal causes of action. In advance of trial, the parties have filed motions for summary judgment which are resolved in this opinion.

The essential facts of the case, either undisputed or, where disputed, recited in the light most favorable to the nonmovant on the summary judgment record, are as follows.

The plaintiff, John K. Beasley, was employed by defendant Consolidation Coal Company ("Consol") beginning in June 1982. At the time of his firing on January 30, 2011, he held the position of Construction Foreman at Consol's Buchanan Mine, located in this judicial district. At that time and for several years prior, defendant William J. Meade was the General Superintendent of the Buchanan Mine and, as such, was Beasley's indirect supervisor. Meade, in turn, reported to Jack Richardson, a Division Vice President.

Throughout his employment, Beasley missed significant amounts of work — sometimes up to six months at a time — for a variety of health related reasons such as colitis and serious shoulder problems. Despite the fact that the majority of these absences qualified for approved medical leave, Meade and other Consol managers allegedly harassed, criticized, and retaliated against Beasley for missing work. For example, Beasley received low work performance rankings for 2008 and 2009, purportedly because of absences related to his serious medical conditions. Additionally, on April 28, 2009, Consol managers, including Meade, collaborated to issue a disciplinary letter to Beasley, labeling him a "chronic and excessive[ly]

absent employee," and imposing a disciplinary program that required him to maintain a particular rate of attendance for the next six reporting periods.[1]  Finally, on January 22, 2010, Richardson met privately with Beasley to discuss his health problems and attendance record.  During this meeting, Beasley complained about harassment by Meade and other Consol managers due to his absences from work.

Shortly after Beasley's meeting with Richardson, on January 29, 2010, defendant James C. Hampton, a Consol employee who operated an underground coal storage facility, reported to supervisor Jim Mullins that he had discovered smoking materials in Beasley's coat underground on January 23, 2010, but had not reported it earlier because of fear of the consequences.  Specifically, Hampton reported that he had discovered a pack of cigarettes, a lighter, and a baggie of cigarette butts in Beasley's coat pocket.  The incident was quickly reported up the chain of command to Meade and Richardson.  Smoking materials are strictly forbidden in underground coal mines because of the danger of explosion.

On January 30, 2010, Beasley was called to the mine and asked by Meade to open the locker supplied to him by the company.  Beasley originally consented, but

---

[1] Beasley objected to this charge of chronic absenteeism, submitting a six-page written complaint responding to the allegations and requesting that Consol and Meade stop harassing him for taking time off to recover from serious medical conditions. Shortly afterwards, Consol's Human Resources Department reviewed the disciplinary letter, recognized that Consol had improperly categorized Beasley's approved medical leave as "absenteeism," and ordered that the letter and its disciplinary program be retracted.

-3-

withdrew consent after Meade refused to tell him why Consol needed to search the locker. At that point, Meade, in the presence of other Consol employees, allegedly said that Consol had evidence Beasley had been smoking cigarettes underground. Beasley denied the accusation but refused to open the locker. Meade then told Beasley that if he refused access to the locker, he could resign or would be fired. Beasley would not resign and would not open the locker and he was fired. Subsequently, Consol opened Beasley's locker and found a jacket with smoking materials of the kind previously described by Hampton.

In February 2010, Meade communicated to others within Consol and also to the Virginia Department of Mines, Minerals, and Energy ("DMME") that Beasley had violated the law and company policy by taking smoking materials underground. DMME subsequently initiated proceedings to revoke Beasley's mining certifications. Additionally, on May 6, 2010, Terry Ratliff, a DMME mine safety official, swore out a criminal warrant charging Beasley with a violation of Virginia Code § 45.1-161.177, which makes it a felony to take smoking materials into an underground mine. After an eleven-hour preliminary hearing, a judge of the Buchanan County, Virginia, General District Court dismissed the criminal charge for lack of probable cause. Afterwards, Consol attempted to persuade the Commonwealth's Attorney for Buchanan County to seek a direct grand jury

indictment, but the Commonwealth's Attorney decided not to further pursue a charge against Beasley.

In the present action, Beasley alleges that his termination and the resulting proceedings against him were the result of maliciously false accusations by Consol and its employees. Specifically, Beasley contends that Consol employees conspired to have a false allegation made that he had smoked underground, and planted evidence in his locker to corroborate that accusation. Beasley claims the motivating cause for Consol's scheme was to produce a pretext to fire him because he had missed time from work due to his legitimate disabilities and serious health conditions.

Beasley asserts claims against the defendants for defamation, defamation per se, insulting words in violation of Virginia Code § 8.01-45, and malicious prosecution. Additionally, Beasley asserts a claim against Consol for discrimination due to missed time from work because of chronic medical conditions, in violation of the Americans with Disabilities Act ("ADA"), and a claim against Consol and Meade for interfering with his rights to be granted leave from work for serious health conditions without harassment or discrimination, in violation of the Family and Medical Leave Act ("FMLA").

Case 1:11-cv-00055-JPJ-PMS   Document 116   Filed 06/13/12   Page 5 of 30   Pageid#: 2637

Jurisdiction of this court is based upon the federal causes of action, 28 U.S.C.A. § 1331 (West 2006), with supplemental jurisdiction over the state law claims. 28 U.S.C.A. § 1367(a) (West 2006).

The defendants have moved for summary judgment on all six counts, and the plaintiff has moved for partial summary judgment solely on the FMLA claim. *See* Fed. R. Civ. P. 56(a). The motions have been briefed and argued and are ripe for decision.

II

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see* Fed. R. Civ. P. 56(a). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Ross v. Commc'ns Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985), *overruled on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

Applying these standards, the defendants' Motion for Summary Judgment must be granted in part and denied in part, and the plaintiff's Motion for Partial Summary Judgment must be denied.

-6-

A. DEFAMATION AND DEFAMATION PER SE.

In Count One, Beasley sets forth a claim of defamation. In order to prevail on this claim, the plaintiff must prove the publication of an actionable statement about the plaintiff, with the requisite intent. *See Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005).

The defendants first argue that Beasley cannot prove that any "actionable statements" were made about the plaintiff. A statement "must be both false and defamatory" to be actionable. *Id.* True statements do not support a cause of action for defamation. Further, statements of pure opinion are generally not actionable because such statements cannot be objectively characterized as true or false. However, statements of verifiable facts simply couched as opinion can constitute the basis for defamation if they can be reasonably interpreted to contain provably false factual connotation. *See, e.g., Raytheon Technical Servs. Co. v. Hyland*, 641 S.E.2d 84, 90-91 (Va. 2007).

The defendants contend that summary judgment should be granted with respect to Meade because his communications were either true, or expressions of opinion that are not actionable as defamation. The defendants allege that Meade simply told Beasley, in front of two other Consol employees, that Consol had received a report from Hampton of smoking materials in Beasley's coat underground. Because this would be considered as true, the defendants argue that

it is not an actionable statement. However, factual disputes remain as to Meade's exact statements. Beasley alleges that Meade did not just indicate that Consol had received a report of smoking materials underground, but instead stated he had evidence Beasley had been *smoking* underground. A jury could reasonably find such a statement to be defamatory and false, since no one ever directly accused Beasley of actually smoking underground.

Furthermore, the defendants argue that Beasley has no proof that Meade told others within Consol or DMME that Beasley was smoking underground. However, Terry Ratliff confirmed that Meade told him he personally believed Beasley had smoked underground. (Defs.' Mot. for Summ. J. Attach. N, ¶ 9.) The defendants contend that this statement is a pure opinion, not an actionable statement. However, I disagree. Meade's statement did not necessarily depend on his own experience or point of view, but rather contained factual assertions capable of being proven true or false. This is not the type of pure opinion excluded from defamation claims.

Next, the defendants seek summary judgment on the ground that the allegedly defamatory statements were privileged. The defendants first argue that Meade and Hampton's statements to DMME are absolutely privileged because they qualify as "reports to law enforcement." The defendants cite cases as support for the notion that all reports to law enforcement are absolutely privileged. *See*

*Mangold v. Analytic Servs., Inc.*, 77 F.3d 1442, 1446-47 (4th Cir. 1996); *Holmes v. Eddy*, 341 F.2d 477, 480 (4th Cir. 1965); *Shabazz v. PYA Monarch, LLC*, 271 F. Supp. 2d 797, 806 (E.D. Va. 2003). However, all of these cases dealt with federal investigations in which the Virginia common law defamation claims were overridden by federal common law principles. Because DMME is a state body, the logic behind these cases does not apply. Moreover, under Virginia common law, absolute immunity is not provided for statements made to Virginia agencies outside of quasi-judicial proceedings. *See Lindeman v. Lesnick*, 604 S.E.2d 55, 58-59 (Va. 2004); *Elder v. Holland*, 155 S.E.2d 369, 374-75 (Va. 1967). Since none of Meade's or Hampton's statements to DMME took place within the safeguards of a formal, quasi-judicial proceeding, their statements do not qualify for absolute immunity.

The defendants alternatively claim that Meade's and Hampton's allegedly defamatory statements are qualifiedly privileged because they were made in the employment context. "Communications between persons on a subject in which the persons have an interest or duty are occasions of privilege." *Larimore v. Blaylock*, 528 S.E.2d 119, 121 (Va. 2000). However, this privilege may be defeated if the plaintiff proves by clear and convincing evidence that the defamatory statements were made maliciously. *See id*. The type of malice necessary to overcome a qualified privilege is '"behavior actuated by motives of personal spite, or ill-will,

Case 1:11-cv-00055-JPJ-PMS   Document 116   Filed 06/13/12   Page 9 of 30   Pageid#: 2641

independent of the occasion on which the communication was made."' *See Se. Tidewater Opportunity Project, Inc. v. Bade*, 435 S.E.2d 131, 132 (Va. 1993) (quoting *Smalls v. Wright*, 399 S.E.2d 805, 808 (Va. 1991)).

In this case, the defendants argue that the evidence is wholly insufficient to support a finding that their statements were made with the requisite intent. However, I find that Beasley has presented enough evidence to create genuine issues of material fact as to whether the defendants' statements were malicious. For instance, Meade's history of conflict with Beasley, and his knowledge that Beasley had complained about him to Richardson just a week earlier, could be seen as sources of Meade's malicious motive. The fact that Hampton waited six days to report Beasley's alleged misconduct, and that he changed basic details of his story when retelling it to others, also suggests that his accusations may have been fabricated and malicious. Furthermore, Consol's former reprimand of Beasley for unreliable work habits, its inconsistent explanations regarding why Beasley was fired, and the fact that Consol chose to report the accusations to DMME despite not reporting a similar incident involving a different employee, could all serve as evidence of the defendants' malicious intent. Thus, at this stage in the proceedings, it would be inappropriate for me to find in favor of the defendants on the issue of malice.

The defendants further contend that summary judgment is appropriate because the defendants' statements did not proximately cause the criminal charges or DMME administrative enforcement actions that allegedly injured Beasley. As in any tort case, the defendants are liable only for those damages proximately caused by their tortious conduct. "'The proximate cause of an event is that act or omission which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred.'" *Coleman v. Blankenship Oil Corp.*, 267 S.E.2d 143, 147 (Va. 1980) (quoting *Beale v. Jones*, 171 S.E.2d 851, 853 (Va. 1970)).

Here, the defendants claim that the DMME enforcement actions and the criminal prosecution were caused by an independent, intervening cause — namely, independent investigation by state mining regulators and prosecutors. However, this argument ignores the fact that an intervening cause that stems from the defendants' own conduct cannot sever the chain of liability. *See, e.g., id.* The investigation by state mining regulators arguably never would have begun but for the defendants' reports. Additionally, Beasley alleges that Consol was actively involved in the pursuit of criminal charges against him, going so far as to "prep" the Assistant Commonwealth's Attorney in advance of the court proceeding. Such evidence is sufficient to survive summary judgment on the issue of proximate cause.

Finally, the defendants argue that Beasley's defamation claim is barred by the Virginia Workers' Compensation Act because it results from an accident arising out of and in the course of Beasley's employment. Pursuant to Virginia law, when an employee sustains a covered injury, the Act provides the sole and exclusive remedy available against the employer. Va. Code Ann. § 65.2-307(a) (2007); *Butler v. S. States Coop., Inc.*, 620 S.E.2d 768, 772 (Va. 2005).

In order to be covered under the Act, Beasley's injury must have been (1) an injury by accident; (2) arising out of his employment; and (3) arising in the course of his employment. *See Combs v. Va. Elec. & Power Co.*, 525 S.E.2d 278, 281 (Va. 2000). An "injury by accident" has been defined within the context of the Act as an injury caused by an identifiable incident or sudden precipitating event that results in an obvious sudden mechanical or structural change in the body. *Morris v. Morris*, 385 S.E.2d 858, 865 (Va. 1989). Under Virginia law, the damages that flow from an action for defamation do not constitute such an injury by accident. *See, e.g., Williams v. Garraghty*, 455 S.E.2d 209, 218 (Va. 1995); *Wines v. Fuller*, No. 97-239, 1998 WL 972162, at *2 (Va. Cir. Ct. Apr. 2, 1998). Therefore, Beasley's defamation claim is not within the exclusive jurisdiction of the Act.

Accordingly, I will deny the defendants' Motion for Summary Judgment as to Count One. With respect to Count Two, the claim of defamation per se, the defendants do not assert any new arguments aside from those maintained in favor

-12-

of summary judgment for the defamation claim. Thus, for the reasons discussed, I find that summary judgment is also inappropriate as to Count Two.

B. INSULTING WORDS STATUTE.

Beasley's claim in Count Six under Virginia's insulting words statute must also survive the defendants' Motion for Summary Judgment. Virginia law provides that "[a]ll words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Va. Code Ann. § 8.01-45 (2007). The Fourth Circuit has held that this statute is virtually co-extensive with the common law action for defamation. *See Dwyer v. Smith*, 867 F.2d 184, 195-96 (4th Cir. 1989). As such, the facts previously discussed in connection with Beasley's defamation claims apply to the insulting words claim and make summary judgment inappropriate.

The defendants point out that the insulting words statute includes an element not found in common law defamation. The insulting words statute requires that the words must "tend to violence and breach of the peace." The defendants argue that, because there was no violence or threat of violence at the time Beasley was confronted and refused to open his locker, Beasley's insulting words claim cannot succeed. This argument attempts to prove too much. The relevant inquiry is not whether the words uttered *actually cause* physical violence, but whether they objectively *tend* to violence or breach of the peace. *See, e.g., Trail v. Gen.*

-13-

*Dynamics Armament & Technical Prods., Inc.,* 697 F. Supp. 2d 654, 658-59 (W.D. Va. 2010). While the exact substance of Meade's words to Beasley is disputed, both sides agree that Meade's statements suggested that Beasley had committed a felony and endangered the lives of his co-workers. The Supreme Court of Virginia has repeatedly noted that false accusations of a crime are "insulting and [tend] to violence and breach of the peace." *Id.* at 658 (quoting *Zayre of Va., Inc. v. Gowdy*, 147 S.E.2d 710, 713 (Va. 1966)). Because of the serious nature of Meade's statements, particularly in the mining community, a jury could reasonably conclude that the statements were ones that tend to provoke violence. Accordingly, I will deny the defendants' Motion for Summary Judgment as to Count Six.

C. MALICIOUS PROSECUTION.

Count Three of the plaintiff's Third Amended Complaint sets forth a claim of malicious prosecution. Under Virginia law, the elements of malicious prosecution are: (1) institution of judicial proceedings against the plaintiff; (2) the termination of such proceedings in the plaintiff's favor; (3) actual malice on the part of the defendant in instituting the proceedings; and (4) lack of probable cause for instituting the proceedings. *See Brice v. Nkaru*, 220 F.3d 233, 237 (4th Cir. 2000).

-14-

The defendants' primary argument as to Count Three is that all of the defendants were merely witnesses who did nothing to "institute" the criminal prosecution. However, there is ample evidence showing that the defendants cooperated with DMME in seeking criminal charges against Beasley. For instance, Consol deliberately chose to report Beasley's suspected crime to DMME, despite the fact that Hampton had given three inconsistent statements about the incident, and even though Consol had previously chosen not to report a similar incident involving a different employee. Meade also purportedly told DMME that he believed Beasley had smoked underground. Furthermore, Beasley alleges that Consol stayed in close contact with the Commonwealth Attorney's office over the course of the prosecution, providing what it thought was helpful information and making suggestions about how to handle the case. Such adoption and ratification of the charges initially filed by DMME is sufficient to establish the first element of a malicious prosecution claim. *See Clinchfield Coal Corp. v. Redd*, 96 S.E. 836, 839 (Va. 1918).

The defendants alternatively argue that they had probable cause to institute the proceedings against Beasley, and that Beasley cannot prove malice by the defendants in instituting the proceedings. I find these arguments to be unpersuasive. Hampton's inconsistent statements and failure to promptly report the incident, Beasley's general reputation for safety in the workplace, and the fact

Case 1:11-cv-00055-JPJ-PMS   Document 116   Filed 06/13/12   Page 15 of 30   Pageid#: 2647

that Beasley's locker was allegedly accessible to others at the mine, all support a lack of probable cause to institute criminal proceedings against Beasley. Finally, as previously discussed with respect to the defamation claims, there are still genuine issues of material fact as to whether the defendants acted maliciously.

The defendants also contend that Beasley's malicious prosecution claim is barred by the exclusive remedy provisions of the Virginia Workers' Compensation Act. As previously stated, in order to be covered under the Act, Beasley's injury must have been (1) an injury by accident; (2) arising out of his employment; and (3) arising in the course of his employment. *See Combs*, 525 S.E.2d at 281. The Supreme Court of Virginia has noted that the expressions "arising out of" and "in the course of" are not synonymous, and both conditions must be present in order to fall within the Act. *See Brown v. Reed*, 165 S.E.2d 394, 396 (Va. 1969). While it is true that the criminal charges pursued against Beasley "arose out of" an incident connected to his employment, the allegedly malicious prosecution did not occur "in the course of" his employment. An accident occurs "in the course of" employment when it takes place within the period of employment. *See id*. It has been held that terminated employees are not entitled to workers' compensation, even for injuries they suffer while winding up their affairs and still on the employer's premises. *See, e.g., Nat'l Biscuit Co. v. Litzky*, 22 F.2d 939, 941-42 (6th Cir. 1927); *Adams v. Uvalde Asphalt Paving Co.*, 200 N.Y.S. 886, 887-88

(N.Y. App. Div. 1923). Because Beasley had already been discharged and had left Consol's premises before the prosecution began, his malicious prosecution claim does not fall within the exclusive jurisdiction of the Act.

Accordingly, I find that Count Three must survive the defendants' Motion for Summary Judgment.[2]

D. THE ADA.

Count Four sets forth three separate ways that Consol allegedly violated Beasley's rights under the ADA. Specifically, Beasley alleges that Consol harassed and discriminated against him on the basis of his disability, failed to reasonably accommodate him, and retaliated against him for receiving reasonable accommodations. Consol argues for summary judgment based on various different theories. For the following reasons, I will grant summary judgment for the defendants.

Consol's main argument is that Beasley cannot prevail on his ADA claims because he is not a "qualified individual" protected by the ADA. Pursuant to 42 U.S.C.A. § 12111(8) (West Supp. 2012), a qualified individual is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."

---

[2]    Consol also contends that it cannot be held vicariously liable for any torts committed by its employee Hamilton. However, I find that there is evidence by which the jury might find that any such acts were committed within the course of his duties for Consol.

Consol first contends that Beasley's poor attendance record prevents him from being considered a "qualified individual." However, Beasley alleges that, from November 2006 to April 2009, all of his absences aside from one day were approved medical leaves of absence. The ADA clearly contemplates that such approved medical leaves of absence are reasonable accommodations that cannot be used to penalize the employee. Thus, Beasley could reasonably be considered a "qualified individual" despite these absences.

Nevertheless, Consol also argues that Beasley is not qualified to perform the duties of his position based on his application for and receipt of social security disability benefits. The Supreme Court has established that an employee receiving social security disability benefits can still bring a discrimination claim under the ADA, provided there is a reasonable explanation, because the definition of "disabled" for social security purposes is different than that for ADA purposes. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 802-03 (1999). Particularly, reasonable accommodations are not considered when deciding whether someone is "disabled" for social security purposes. However, "[t]he mere possibility that [an employee] *might* have been able to work at the time of his benefits application [with reasonable accommodations] cannot adequately explain the inconsistency; the record must contain evidence supporting the explanation."

-18-

*EEOC v. Greater Balt. Med. Ctr., Inc.*, No. 11-1593, 2012 WL 1302604, at *7 (4th Cir. Apr. 17, 2012) (unpublished).

In this case, Beasley argues that he could have continued to work if given a reasonable accommodation such as relocation to the position of an aboveground foreman. Yet, according to Gerald Kowzan, the Manager of Human Resources for the Central Appalachia Coal Operations of Consol, "[f]rom January 2010 to the present there were no [vacant] positions for outside work for foremen at the Buchanan Mine." (Defs.' Reply to Pl.'s Opp'n to Defs.' Mot. for Summ. J. Attach. U, ¶ 3.) The ADA does not require Consol to create new positions to reasonably accommodate Beasley. Furthermore, even if aboveground positions had been available, a reasonable juror could not conclude that Beasley could have performed the essential functions of these jobs. The only outside work for foremen would have been at Consol's preparation plant, where Beasley would have been exposed to heights, heavy machinery, at least moderate amounts of dust and fumes, and other physical rigors that the Social Security Administration explicitly decided he could not tolerate.[3] (Defs.' Mot. for Summ. J. Attach. Q; Defs.' Reply to Pl.'s

---

[3] Beasley also suggests he could have continued to work as a mine foreman if given the reasonable accommodations provided to so-called Part 90 miners, as defined in the federal black lung regulations. However, the accommodations given to Part 90 miners only address the miners' exposure to respirable dust. *See* 30 C.F.R. § 90.3(a) (2011). Such accommodations would not have resolved Beasley's other limitations, such as lifting restrictions of twenty pounds occasionally and ten pounds frequently, or how he

Opp'n to Defs.' Mot. for Summ. J. Attach. V, ¶ 5-9.)  Thus, I find that Beasley is not a "qualified individual" protected by the ADA.

Beasley argues that, even if he is not a "qualified individual," he can still assert an ADA retaliation claim.  Beasley is correct that the ADA's retaliation provision protects all individuals and not just "qualified individuals."  *See Morgan v. Joint Admin. Bd., Ret. Plan of Pillsbury Co. & Am. Fed'n of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 458 (7th Cir. 2001).  However, this does not save Beasley's retaliation claim because he is unable to prove any damages associated with this claim.

In his ADA claim, Beasley alleges that Consol's retaliation caused him to suffer personal and emotional damages, loss, and other compensatory damages, as well as lost wages and benefits.  He also alleges that Consol's violations warrant an award of punitive damages.  However, compensatory and punitive damages are not allowable for ADA retaliation claims.  *See Rhoads v. FDIC*, 94 F. App'x. 187, 188 (4th Cir. 2004)  (unpublished).  Thus, Beasley's only viable claim for monetary relief under the ADA — a claim for lost wages and benefits — is based upon the allegation that he would have worked an additional twenty-nine months for Consol if he had not been fired.  However, as previously discussed, Beasley was totally disabled and could not perform his job at Consol, even with the suggested

_____

must avoid moderate exposure to fumes or concentrated exposure to machinery and heights.

accommodations. Thus, Beasley's ADA retaliation claim must fail because he has not made a reasonable showing of any associated damages.

Accordingly, I will grant summary judgment to Consol as to Count Four.

E.  THE FMLA.

Count Five sets forth claims under the FMLA, 29 U.S.C.A. §§ 2601-2619 (West 2009). Beasley contends that Consol violated the FMLA by failing to provide him notice of his rights under the FMLA, by interfering with his FMLA rights, and by retaliating against him for utilizing his FMLA rights. Both parties have moved for summary judgment based on various different grounds.

To begin with, the defendants contend that Beasley's claims of violations of the FMLA prior to January 23, 2009, are barred by the statute of limitations. 29 U.S.C.A. § 2617(c) provides that an action may be brought no later than two years after the date of the last event constituting the alleged violations, or within three years in the case of willful violations. "A willful violation is shown when an employer knew or showed reckless disregard regarding whether its conduct was prohibited." *Settle v. S.W. Rodgers Co.*, No. 98-2312, 1999 WL 486643, at *3 (4th Cir. July 12, 1999) (unpublished).

The defendants argue that Beasley is claiming at least some violations of the FMLA's notice provisions outside the two-year statute of limitations period, and that none of the alleged violations were willful. However, similar to the issue of

malice, there are at least some genuine issues of material fact as to whether the defendants acted willfully. For example, the fact that Consol follows a corporate policy that is in direct conflict with the FMLA's notice requirements could reasonably be seen as evidence that the defendants willfully violated the FMLA. Thus, summary judgment for the defendants is inappropriate on this issue.

As another preliminary matter, the defendants contend that relief against Meade, individually, is not permitted under the FMLA. The defendants cite *Carter v. Rental Unif. Serv. of Culpeper, Inc.*, 977 F. Supp. 753 (W.D. Va. 1997), in which Judge Michael of this court held that there was no individual liability under the FMLA. However, I decline to follow this holding. The Fourth Circuit has subsequently stated that the question of individual liability under the FMLA is an open question in this circuit. *See Jones v. Sternheimer*, 387 F. App'x. 366, 368 (4th Cir. 2010) (unpublished). Furthermore, at least three other circuits have found that such liability exists as to individual managers and supervisors of private companies. *Modica v. Taylor*, 465 F.3d 174, 184-87 (5th Cir. 2006); *Mitchell v. Chapman*, 343 F.3d 811, 827 (6th Cir. 2003); *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002).

The defendants argue that, even to the extent individual liability can be imposed under the FMLA, there is no factual basis to do so in this case. I disagree. Contrary to Consol's claim that Meade had no responsibility for compliance with

the FMLA, his deposition testimony suggests otherwise. Meade specifically stated that it was part of his job to make sure Consol complied with the FMLA. (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. Ex. 13, at 56-57.) Moreover, given Meade's supervisory role over Beasley, there is sufficient record to justify a finding that he was at least partially responsible for the alleged FMLA interference and retaliation claims. Accordingly, I decline to grant summary judgment on this ground.

Turning to the claimed violations, Beasley first alleges that Consol and Meade violated the FMLA by failing to provide Beasley notice of his rights under the FMLA.

Under 29 C.F.R. § 825.300(b)(1) (2011), employers must notify an employee of his eligibility to take FMLA leave within five business days of either (1) receiving a request for FMLA leave from the employee, or (2) acquiring knowledge that the employee's leave may be for a FMLA-qualifying reason. Further, each time the employer sends an eligibility notice, it must also provide the employee with a "rights and responsibilities notice" that details the specific expectations and obligations of the employee and explains any consequences of a failure to meet these obligations. *See* 29 C.F.R. § 825.300(c) (2011).

Beasley alleges that Consol's corporate policy, which states that an individualized notice will not be given to an employee until at least thirty days

after the onset of a serious medical condition, is in direct violation of the FMLA's notice requirements. Beasley also alleges that he never received any FMLA notices whatsoever after injuring his shoulder on November 5, 2009. Consol itself has produced no documentation and has volunteered no testimony suggesting that Consol ever sent him any such documents. In fact, the only document provided by Consol that purports to address Beasley's FMLA rights is a letter addressed to Beasley, dated January 8, 2009. While this notice plainly relates to Beasley's medical leave for a shoulder injury in August 2008, it does not pertain to Beasley's injury from November 2009. Moreover, Beasley contends that he never received this letter, and, even if he had received it, the letter does not comply with the FMLA's requirement that it be sent within five business days of receiving a request for FMLA leave. Given these facts, Beasley seeks summary judgment as to his claim of violation of the FMLA's notice provisions.

However, even assuming the complete accuracy of Beasley's factual recitations, Beasley cannot prove that he suffered any injury from the defendants' alleged violation of the notice provisions. "[T]he FMLA clearly provides that employees have a right of action only to recover damages or to seek equitable relief for violations of the Act, and not to act as a private attorney general in enforcing the provisions of the Act." *Dawson v. Leewood Nursing Home, Inc.*, 14 F. Supp. 2d 828, 832 (E.D. Va. 1998). Because Beasley does not seek injunctive

relief, he must therefore make a reasonable showing of damages. Beasley does not claim that he was unaware of his FMLA rights, or that he would have taken more leave had he been given appropriate notice. Thus, summary judgment for the plaintiff is clearly inappropriate and, because Beasley has not made a reasonable showing of damages, I will grant summary judgment for the defendants on the notice claim.

Next, Beasley alleges that Consol and Meade violated the FMLA by interfering with Beasley's exercise of his FMLA rights.

Pursuant to 29 U.S.C.A. § 2615(a) (West 2009), it is unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA. In order to prevail on his interference claim, Beasley must establish that he was entitled to leave under the FMLA; that the defendants interfered with, restrained, or denied Beasley the benefits to which he was entitled; and that Beasley was prejudiced by such interference.

While it is undisputed that Beasley qualified for FMLA leave due to his two shoulder surgeries and diagnosis of colitis, it is also undisputed that Beasley was granted all of the medical leave time he requested. Beasley obviously has no claim for interference with leave that he requested and was granted. However, Beasley identifies three other events that he claims "interfered" with his FMLA

rights — a low score on his job evaluation for 2008, a disciplinary letter from Consol in April 2009 addressing his attendance, and a marked down work performance score for 2009.

These three events are better defined as instances of "retaliation" instead of "interference," since they all occurred after Beasley already requested, was granted, and took FMLA-qualified leaves of absence. In fact, all three of these actions are also listed as the bases of Beasley's retaliation claim. For instance, the performance scores for 2008 and 2009, which he claims resulted from his prior FMLA-qualified leave of absence, did not "interfere" with this leave, as he had already taken it. Nevertheless, Beasley claims that the disciplinary letter of April 2009 violated the FMLA by discouraging any future attempts to exercise his FMLA rights. However, Beasley does not specify what other leave he would have taken had he not been discouraged, and, at the time of the letter, Beasley had used up all of his FMLA leave and had no more available for several months. Additionally, the letter was quickly withdrawn within a week after it was issued, and Beasley was so informed. Accordingly, I find that there remain genuine issues of material fact as to whether Beasley was prejudiced by any so-called interference, making summary judgment inappropriate for either party.

Finally, Beasley alleges that Consol and Meade retaliated against him for engaging in activity protected by the FMLA, namely requesting and taking medical leave for serious medical conditions.

To establish a prima facie case of FMLA retaliation, Beasley must show that he engaged in protected activity, that the defendants took adverse action against him, and that the adverse action was causally connected to his protected activity. *See Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006). Once Beasley meets this burden, the burden shifts to Consol and Meade to show that they took the adverse actions against Beasley for legitimate, non-discriminatory reasons unrelated to the exercise of his FMLA rights. *See Nichols v. Ashland Hosp. Corp.*, 251 F.3d 496, 502 (4th Cir. 2001). If the defendants in turn can establish such non-discriminatory reasons for the adverse actions, the burden shifts back on Beasley to show that the reasons proffered by the defendants are pretextual. *Id.*

First, a reasonable jury could find that Beasley has established a prima facie case of FMLA retaliation. It is undisputed that Beasley requested and took at least some FMLA leave that qualifies as "protected activity." It is also undisputed that the same three events Beasley notes in his interference claim — his low performance evaluation score for 2008, the lowering of his initial performance evaluation score for 2009, and the April 2009 disciplinary letter addressing his

attendance — as well as Meade's refusal to grant Beasley's request to move to a preferred shift, all qualify as "adverse actions." Furthermore, Beasley reasonably could connect these events to his use of FMLA qualified medical leave. Meade affirmed in his deposition that Beasley's low performance ranking for 2008 was based on his unavailability due to medical leave of absence, at least some of which was indisputably FMLA-qualified. Beasley's performance score for 2009 was marked down less than a week after Meade allegedly complained about Beasley's attendance and Consol supervisors met with Beasley to discuss his absences. Additionally, the April 2009 disciplinary letter explicitly stated that it was based on medical leaves of absence that qualified Beasley for protected leave under the FMLA. Finally, Beasley alleges that neither Consol nor Meade gave any explanation as to why they denied his request to move shifts, possibly suggesting the denial was linked to his protected activity.

Even though Beasley can reasonably establish a prima facie case of FMLA retaliation, his motion for summary judgment must be denied because the defendants have asserted arguably legitimate, non-discriminatory reasons for their adverse actions. However, in the same sense, Beasley has raised genuine issues of material fact as to whether these non-discriminatory reasons are simply pretextual. Thus, the defendants' motion for summary judgment also must be denied.

To elaborate, the defendants argue that Beasley's low performance ranking for 2008 was due to other performance issues aside from absences, such as Beasley's request for a job change in 2008 due to problems with stress, and reports that Beasley was affected by mood swings. However, Beasley alleges that the defendants never recorded any reports of mood swings, and that he was never confronted about this issue. Moreover, Meade admits that he commended Beasley for his "excellent" performance earlier in 2008.

The defendants also allege that Beasley's 2009 performance rating was marked down due to general displeasure with Beasley's performance, and because Consol wanted to moderate the magnitude of score changes from year-to-year. Yet, Beasley alleges that his 2008 performance rating was already exceptionally low due to the defendants' prior retaliation. Beasley also argues that Consol supervisors are unable to point out any problems with Beasley's performance in 2009 aside from his medical absences.

Finally, the defendants assert that their failure to change Beasley's shift was not for retaliation, but due to operational requirements at the mine. While a reasonable jury could certainly find this to be a plausible justification, Beasley notes that there is no documentation of this explanation, nor any alternative explanation, for Consol's refusal to change Beasley's shift.

It is clear that genuine issues of material fact remain regarding the defendants' motivation for their treatment of Beasley.[4]   Accordingly, I find summary judgment to be inappropriate as to the FMLA interference and retaliation claims in Count Five.


III

For the reasons stated, it is **ORDERED** that the plaintiff's Motion for Partial Summary Judgment (EFC No. 59) is DENIED, and the defendants' Motion for Summary Judgment (ECF No. 54) is GRANTED IN PART and DENIED IN PART.   The defendants' Motion for Summary Judgment is GRANTED with respect to Count Four and the FMLA notice claim of Count Five, and it is DENIED as to all other claims.


ENTER:   June 13, 2012


/s/  James P. Jones
United States District Judge

---

[4] I note that although the defendants have not specifically provided a non-discriminatory justification for the final adverse action, the disciplinary letter of April 2009, they allege that the letter was withdrawn within a week of being sent, and that Beasley was so informed.   Thus, as previously discussed, there are genuine issues of material fact as to whether Beasley was damaged or prejudiced by the letter.

-30-